ANNIE P. MONTGOMERY, EMPLOYEE, PLAINTIFF v. TOASTMASTER, INC., EMPLOYER, SELF-INSURED, (CORPORATE CLAIMS MANAGEMENT, SERVING AGENT), DEFENDANT

No. COA04-1061

(Filed 1 November 2005)

## 1. Workers' Compensation— findings—supporting evidence— conclusive

There was evidence to support the Industrial Commission's findings of fact in a workers' compensation case concerning the nature of the employment offered to plaintiff after her injury. Even if there was evidence to the contrary, the Commission's findings are conclusive when supported by competent evidence, and the determination of credibility is the responsibility of the Commission.

## 2. Workers' Compensation— make-work after injury—part-time, irregular

To prove that a disabled employee is employable, an employer must show that the tendered employment accurately reflects the employee's ability to compete with others in the job market. The Industrial Commission did not err here by concluding that plaintiff was entitled to ongoing temporary total disability where the jobs given to plaintiff were not full-time, regular positions, with similar positions available on the open market.

## 3. Workers' Compensation— evidence and credibility—not explained

Although a workers' compensation defendant argued that the Industrial Commission did not consider all of the evidence, the

Commission does not have to explain its findings by distinguishing the evidence it finds credible.

Appeal by Defendant from opinion and award entered 10 June 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 May 2005.

*The Sumwalt Law Firm, by Mark T. Sumwalt and Vernon Sumwalt, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Jonathan C. Anders and Meredith T. Black, for defendant-appellant.*

WYNN, Judge.

In general, to prove that a disabled employee is employable, an employer must show that tendered employment accurately reflects the employee's ability to compete with others in the job market. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 438, 342 S.E.2d 798, 806 (1986). In this case, the employer contends that the employee's light-duty work was "suitable" employment. Because the record shows competent evidence supporting the Commission's findings of fact that in turn support the conclusions of law that the tendered employment positions were "make-work", we affirm the opinion and award.

Employee, Annie P. Montgomery (sixty-five years old), worked for Employer, Toastmaster, Inc., for thirty-three years in the assembly department. Her work on the assembly line for seventeen years required gripping and twisting screwdrivers repetitively with both hands; and, her work with plastic molding for fifteen years required gripping pliers with both hands to insert crystals and place other components into clocks. Ms. Montgomery estimated that she did this approximately three thousand times a day when inserting crystals and between 1,200 to 3,000 times a day when handling the other components. After a period of time, she experienced symptoms of carpal tunnel syndrome in both hands.

As stipulated to by the parties, Ms. Montgomery sustained a compensable injury by accident on 2 October 1998. On 21 January 1999, at the recommendation of her physician, Dr. Ward Oakley, Ms. Montgomery stopped working in the assembly department. Dr. Oakley performed surgery on her left wrist in January 1999 and on her right wrist in March 1999. He released her to return to work on 1 May 1999, with restrictions to avoid strenuous repetitive use of her hands until 1 June 1999.

MONTGOMERY v. TOASTMASTER, INC.

[174 N.C. App. 320 (2005)]

While Ms. Montgomery was out of work from 21 January 1999 through 3 May 1999, Toastmaster paid Ms. Montgomery temporary disability benefits. During that time, Ms. Montgomery and Toastmaster entered into a Form 21 agreement approved by the North Carolina Industrial Commission. On 5 May 1999, Toastmaster provided Ms. Montgomery with light-duty work in the subassembly department which included, *inter alia*, tearing down parts of clocks for recycling and incorporating the parts into other clocks. All the subassembly tasks required, at some point, continuous, repetitive, or consistent use of the hands. Ms. Montgomery testified that on certain business days, she did not have anything to do so she was sent home.

In June 1999, following Dr. Oakley's advice that she could resume normal activities, Ms. Montgomery returned to her previous job in the plastic molding department. However, evidence shows that Ms. Montgomery's carpal tunnel symptoms returned in less than an hour of performing her job duties in the plastic molding department. As a result, Dr. Oakley determined that she could not perform her previous molding job and placed her on permanent restriction, which meant she should avoid strenuous or repetitive use of her hands. Upon returning to work, Toastmaster again placed her in the subassembly department.

Following a two week plant inventory shutdown in July 1999, Ms. Montgomery retired at the age of sixty-two. Ms. Montgomery testified that she "wanted to continue to work because that was the only income [she] had, you know. But by [her] hands getting messed up like they did, [she] couldn't see where [she] could continue." Since July 1999, Ms. Montgomery has not sought other work.

On 21 February 2003, Deputy Commissioner Lorrie L. Dollar denied Ms. Montgomery's claim for change of condition and ordered Toastmaster to pay permanent partial disability compensation to Ms. Montgomery for fifty weeks. In an opinion and award entered 10 June 2004, the full Commission reversed Deputy Commissioner Dollar and ordered Toastmaster to pay temporary total disability beginning 21 January 1999, and continuing until further order and medical expenses. Toastmaster appealed.

On appeal, Toastmaster argues that (1) the full Commission's findings of fact regarding the nature of Ms. Montgomery's employment were not supported by competent evidence; (2) the full Commission erred in concluding that Ms. Montgomery's employment

MONTGOMERY v. TOASTMASTER, INC.

[174 N.C. App. 320 (2005)]

was not suitable employment; and (3) the full Commission failed to consider all competent evidence.

The standard of review for this Court in reviewing an appeal from the full Commission is limited to determining "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). Our review " 'goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation omitted). The full Commission's findings of fact "are conclusive on appeal when supported by competent evidence[,]" even if there is evidence to support a contrary finding, *Morrison v. Burlington Indus.*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981), and may be set aside on appeal only "when there is a complete lack of competent evidence to support them[.]" *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). Further, all evidence must be taken in the light most favorable to the plaintiff, and the plaintiff "is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Deese*, 352 N.C. at 115, 530 S.E.2d at 553 (citation omitted).

[1] First, Toastmaster argues that the full Commission's findings of fact regarding the nature of Ms. Montgomery's employment were not supported by *any* competent evidence. We disagree.

Toastmaster assigns error to the following findings of fact:

6. The first subassembly job attempted by plaintiff involved separating parts. This was not a normal job any employee did on a full-time basis. Plaintiff herself was sent home when there was not separating work to be done. The separating positions were not regular work positions available in the job market but rather were part-time jobs given to "light-duty" employees from other departments. While plaintiff was there, there were seven to eight employees in subassembly, and all were under work restrictions of some type.

***

11. When plaintiff returned with her increased restrictions, she was put back into the "light duty" subassembly area, where she worked until 4 July 1999 separating parts, punching dials, and

applying labels. During this period, plaintiff had to search for things to do. This modified position plaintiff occupied was not a regular full-time position available in the competitive job market.

12. Defendant-employer was shut down from 4 July 1999 until 12 July 2002 (sic) for vacation and inventory. As of 12 July 1999, the plaintiff stopped work after 33 years working for defendant-employer. The plaintiff retired because what they had her doing "was not a job." The plaintiff wanted to keep working, but her physical limitations and pain prevented it.

13. Plaintiff has not worked or earned any wages since her employment with defendant-employer ended. Plaintiff has not sought other work due to her physical restrictions and vocational limitations.

Our examination of the record on appeal reveals that there is competent evidence to support finding of fact six. Ms. Montgomery testified that her first subassembly job involved separating parts and that Toastmaster sent her home on 5 May 1999, because they had no work for her to do. Toastmaster also sent her home early five days in June. Ms. Montgomery further testified that "[t]here wasn't enough of parts to separate all day[,]" and separating parts was not a permanent, full-time job at Toastmaster, but rather tasks employees performed as needed. Fannie Dockery, foreman at Toastmaster, testified that separating parts and applying labels was not a full-time job. Ms. Dockery also testified that there were seven or eight employees in subassembly, several of those with repetitive motion restrictions.

Further, the record shows competent evidence to support finding of fact eleven. Ms. Montgomery testified that when she returned to work in May 1999, with her light duty restrictions, she separated parts, punched holes out of dials, and put labels on clocks. Ms. Montgomery also testified that during this time period there were times when she had nothing to do and her supervisor would tell her "Well, I've got to find you something to do." She testified that the combination of her three tasks was not a regular, full-time job. Ms. Dockery also testified that nobody performed the tasks given to Ms. Montgomery on a full-time basis.

Additionally, the record shows competent evidence to support finding of fact twelve. Dana Leviner, HR generalist for Toastmaster, testified that in July 1999 the plant closed for two weeks for inventory. Ms. Montgomery testified that she "wanted to continue to work

MONTGOMERY v. TOASTMASTER, INC.

[174 N.C. App. 320 (2005)]

because that was the only income [she] had, you know. But by .[her] hands getting messed up like they did, [she] couldn't see where [she] could continue."

Moreover, the record shows competent evidence to support finding of fact thirteen. Ms. Montgomery testified that she has not worked since her employment with Toastmaster and has not sought other employment due to the limitations of her hand and limited education.

Toastmaster argues that even though Ms. Montgomery's testimony supports findings of fact six, eleven, twelve, and thirteen, her testimony is not credible and there is other evidence that contradicts Ms. Montgomery's testimony. But the full Commission's findings of fact "are conclusive on appeal when supported by competent evidence[,]" even if there is evidence to support a contrary finding. *Morrison*, 304 N.C. at 6, 282 S.E.2d at 463. Further, determining credibility of witnesses is the responsibility of the full Commission, not this Court. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414. This Court does not re-weigh the evidence. *Id.* Therefore, the full Commission's findings of fact are binding on appeal.

[2] Next, Toastmaster argues that the full Commission erred in concluding that Ms. Montgomery's employment was not suitable employment and that she is entitled to ongoing disability benefits. We disagree.

The record shows, and it is not disputed by the parties, that Ms. Montgomery met her burden of proving that she is disabled, i.e., unable to earn wages due to her disability. As a result, the burden shifted to Toastmaster to show that Ms. Montgomery was employable which it sought to do by showing that Ms. Montgomery had been performing on her tendered employment. *See Dalton v. Anvil Knitwear*, 119 N.C. App. 275, 284, 458 S.E.2d 251, 257, *disc. review denied*, 341 N.C. 647, 462 S.E.2d 507 (1995). "However, the fact that an employee is capable of performing employment tendered by the employer is not, as a matter of law, an indication of plaintiff's ability to earn wages." *Saums v. Raleigh Cmty. Hosp.*, 346 N.C. 760, 764, 487 S.E.2d 746, 750 (1997). The tendered employment must accurately reflect the employee's ability to compete with others in the job market in order for the employment to be indicative of an employee's earning capacity. *Peoples*, 316 N.C. at 438, 342 S.E.2d at 806. Thus, "if other employers would not hire the employee with the employee's limitations at a comparable wage level . . . [or] if the proffered employment is so modified because of the employee's limitations that it is not ordinarily

available in the competitive job market[,]" the job is "make work" and is not competitive. *Id.*

The full Commission concluded that the jobs given to Ms. Montgomery in May and June 1999 were not suitable jobs and Toastmaster did not meet its "burden of producing evidence that suitable jobs are available to plaintiff and that the plaintiff is capable of attaining one given the plaintiff's age, education, physical limitations, vocational skills, and experience." This conclusion is supported by the full Commission's findings of fact that the jobs of separating parts and punching holes on clock dials given to Ms. Montgomery in May and June 1999, were not full-time jobs at Toastmaster; the position given to Ms. Montgomery was not a regular, full-time position offered at Toastmaster; and Toastmaster did not demonstrate that a similar job was available on the open market. These findings of fact support the full Commission's conclusions of law that the jobs given to Ms. Montgomery were not "suitable" and Toastmaster failed to show that suitable jobs are available to Ms. Montgomery on the open market. Therefore, the full Commission did not err in concluding that Ms. Montgomery is entitled to ongoing temporary total disability compensation.

[3] Finally, Toastmaster argues that the full Commission failed to consider all competent evidence. Specifically, Toastmaster contends that the full Commission did not indicate that it gave proper consideration to the testimony of four witnesses. However, determining credibility of witnesses is the responsibility of the full Commission, not this Court. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414. This Court does not re-weigh the evidence. *Id.* Furthermore, "the Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. Accordingly, we must hold that this argument is without merit.

Affirmed.

Judges BRYANT and JACKSON concur.